UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED

JUN 1 8 2021

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

ANGEL H. VELEZ FUNES,

     Petitioner,

    v.                                                            20-CV-883 (JLS)

MR. MERRICK GARLAND, United
States Attorney General, [1]

MR. ALEJANDRO MAYORKAS,
Secretary of the U.S. Department of
Homeland Security,

MR. THOMAS FEELEY, Field Office
Director for Detention Removal,

MR. JEFFREY SEARLS, Facility
Director, Buffalo Federal Detention
Center,

MICHAEL BALL, SDDO,

     Respondents.

## DECISION AND ORDER

---

[1] In his initial petition, Velez Funes sued William Barr as United States Attorney
General and Kevin McAleenan as Secretary of the Department of Homeland
Security. Dkt. 1, at 1. His amended petition names Merrick Garland and Alejandro
Mayorkas as the proper respondents in those capacities. *See, e.g.*, Dkt. 21, at 1.
This substitution aside, the parties dispute which respondents are proper parties.
*See* Dkt. 6, at 34. The Court declines to decide this issue in light of its decision
below.

Angel H. Velez Funes is a native and citizen of Honduras who entered the United States on or about July 1, 2001. He has been detained at the Buffalo Federal Detention Facility pending removal proceedings for nearly 22 months, and petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Velez Funes is currently detained under 8 U.S.C. § 1226(c). Section 1226(c) requires detention of aliens convicted of certain crimes pending removal proceedings and does not afford a hearing at which the alien may advocate for release. Velez Funes's amended petition argues that Section 1226(c), as applied to him, violates his Fifth Amendment procedural due process rights because it denies his opportunity to contest his continued detention. Dkt. 21, at 2.[2] Velez Funes's initial petition also alleges a substantive due process violation, in addition to a statutory violation of the Immigration and Nationality Act ("INA"). Dkt. 1, at 3-4.[3]

Velez Funes seeks, among other relief, "prompt[] release" from detention. Dkt. 21-1, at 8. For the reasons that follow, the Court denies the relief that Velez Funes requests and dismisses his petition without prejudice.

---

[2] All page references are to the pagination automatically generated by CM/ECF.
[3] An amended petition traditionally supplants the original petition. *See, e.g.,* *Serrano v. Royce*, No. 20-CV-6660, 2020 WL 5096031, at *3 (S.D.N.Y. Aug. 27, 2020) (advising habeas petitioner of same). Here, it is unclear whether Velez Funes intended to replace, or merely supplement, his original petition. Accordingly, this Court addresses the claims raised in both filings.

# BACKGROUND

## I.    Background and Detention

Velez Funes, a native and citizen of Honduras, entered the United States on or about July 1, 2001 as a non-immigrant visitor authorized to remain in the United States until December 31, 2001.  Dkt. 1, at 2 ¶ 6; Dkt. 5-1, at 2 ¶ 5.  He was granted lawful permanent resident status on May 2, 2012.  Dkt. 5-1, at 2 ¶ 6.  On December 23, 2015, U.S. Citizenship and Immigration Services ("USCIS") denied Velez Funes's Petition to Remove Conditions of Residence (Form I-751) and his status was terminated as of May 2, 2014 due to his failure to provide information relating to an arrest.  *Id.* at 2 ¶ 7.

In August 2014, Velez Funes was arrested and charged as a major cocaine trafficker in connection with his role in a Long Island cocaine ring.  Dkt. 6, at 3; *see also* Dkts. 6-1, 6-2.  The drug ring was charged with importing drugs from Mexico to California and then transporting them to Long Island via couriers who were equipped with "traps" to hide the drugs.  *Id.*  A multi-agency investigation resulted in the seizure of 19 handguns, some loaded and some with defaced serial numbers, in addition to six assault rifles and more than $400,000 in cash.  *Id.*

Velez Funes admitted to storing cocaine and supplies, including scales, at his home in furtherance of his participation in the drug ring.  Dkt. 6, at 3.  On February 14, 2019, he was convicted of Conspiracy in the 4th Degree, in violation of New York

State Penal Law § 105.10, and sentenced to a term of 1 to 3 years of imprisonment. Dkt. 5-1, at 2 ¶ 8.

On July 2, 2019, Velez Funes was placed in immigration removal proceedings via Notice to Appear ("NTA"). *Id.* at 3 ¶ 9. The NTA alleged that Velez Funes was a native and citizen of Honduras, and subject to removal pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who, at any time after admission, has been convicted of an aggravated felony as defined in INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), a law relating to an attempt or conspiracy to commit an offense described in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43); and pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who, at any time after admission, has been convicted of a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana. *Id.* at 3 ¶ 10.

On August 12, 2019, Velez Funes, accompanied by counsel, appeared before an immigration judge ("IJ") in Napanoch, New York. *Id.* at 3 ¶ 11. The hearing was adjourned until September 30, 2019 to allow Velez Funes time to prepare. *Id.*

On August 13, 2019, Velez Funes was served with Additional Charges of Inadmissibility/Deportability. *Id.* at 4 ¶ 12. These additional charges alleged that Velez Funes was also subject to removal pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a non-immigrant who has remained in the United States for a time longer than permitted. *Id.*

4

On August 30, 2019, Velez Funes was taken into Department of Homeland Security ("DHS") custody upon release from custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *Id.* at 4 ¶ 13. DHS determined that Velez Funes would remain in DHS custody pending a final administrative determination of his case. *Id.* at 4 ¶ 14. Velez Funes sought review of the custody determination. *Id.*

Velez Funes's case was transferred to the Immigration Court in Batavia, New York. *Id.* at 4 ¶ 15. Velez Funes has since made numerous requests to adjourn his removal proceedings. For example, he appeared, with counsel, before the IJ on November 4, 2019 for master calendar and bond hearings. *Id.* at 4 ¶ 16. Velez Funes requested adjournments of both hearings. *Id.* Velez Funes obtained additional adjournments and continuances on January 6, 2020, February 5, 2020, March 26, 2020, April 22, 2020, and May 6, 2020. *Id.* at 5 ¶¶ 18, 20-22. Velez Funes expressly requested some of these adjournments. *See, e.g., id.* at 5 ¶ 21; Dkt. 5-2, at 2 ¶ 9; *see also* Dkt 6, at 5.

Velez Funes's merits hearing was conducted on June 4, 2020. Dkt. 5-1, at 6 ¶ 23. By order dated June 16, 2020, the IJ denied his applications for relief and ordered him removed to Honduras. *Id.* at 6 ¶ 24. On July 10, 2020, Velez Funes filed an appeal with the Board of Immigration Appeals ("BIA"). *Id.* at 6 ¶ 25. After filing the notice of appeal, Velez Funes sought an extension of time to submit his brief to the BIA. *Id.* at 6 ¶ 26. Velez Funes filed his brief on October 5, 2020, and a decision on the appeal is currently pending.

DHS has detained Velez Funes since August 30, 2019, pending completion of his immigration removal proceedings. *Id.* at 6 ¶ 27; Dkt. 1, at 3 ¶ 12.

## II.  Procedural History

Velez Funes filed his initial petition for habeas corpus on July 13, 2020.  Dkt. 1.  The Government answered and filed a memorandum and declarations in opposition.  Dkts. 5, 6.  Velez Funes replied and moved to dismiss his state court pre-sentence report from evidence.  Dkts. 11, 12.  Velez Funes also made two motions to amend his petition for habeas relief.  Dkts. 13, 19.

On April 21, 2021, this Court granted Velez Funes's motion to amend his petition.  Dkt. 20.  Velez Funes amended his petition, clarifying the statutory basis for his detention and submitting a supporting memorandum of law.  Dkt. 21.  Although the Court's order allowed the Government the opportunity to amend or supplement its previous filings, *see* Dkt. 20, the Government made no further submissions to this Court.

## ANALYSIS

## I.  Velez Funes's Constitutional Claims

### A.  Jurisdiction

Jurisdiction over substantive challenges to final deportation, exclusion, and removal orders resides with the circuit courts; district courts lack jurisdiction over the merits of such orders.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) (holding that the REAL ID Act "eliminates habeas jurisdiction over final orders of

deportation, exclusion, and removal, providing instead for petitions of review . . . ,

which circuit courts alone can consider"). District courts can, however, review

claims that pre-removal detention is unconstitutional. *See Demore v. Kim*, 538 U.S.

510, 516-17 (2003). In this way, habeas corpus review is available to persons "in

custody in violation of the Constitution or laws or treaties of the United States."

*See* 28 U.S.C. § 2241(c)(3).

Velez Funes claims that his nearly-22-month detention without a bond

hearing is unconstitutional based on its duration, thereby violating his due process

rights. Dkt. 1, at 4 ¶¶ 23-26; Dkt. 21-1, at 5 ¶ 15. Velez Funes also claims that the

Government failed "to provide a neutral decision-maker to review" his continued

detention. Dkt. 1, at 4 ¶ 28; Dkt. 21, at 2. The Government does not dispute that

this Court has jurisdiction over Velez Funes's challenge to his continued detention.

Dkt. 5, at 2 ¶ 1.

## B.     Constitutionality of Section 1226(c)

The Fifth Amendment "protects [aliens like Velez Funes] from deprivation of

life, liberty, or property without due process of law." *See Mathews v. Diaz*, 426 U.S.

67, 77 (1976); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well

established that the Fifth Amendment entitles aliens to due process of law in

deportation proceedings."). Equally clear are the "constraints on governmental

decisions which deprive individuals of 'liberty' or 'property' interests within the

meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v.*

*Eldridge*, 424 U.S. 319, 332 (1976).

Velez Funes's detention is mandatory under 8 U.S.C. § 1226(c), which provides that the Attorney General "shall take into custody any alien who . . . is deportable by reason of having committed" certain criminal offenses—including, as relevant here, a crime of moral turpitude committed within five years of admission into the United States, for which the alien may be sentenced to a term of imprisonment of at least one year. *See* 8 U.S.C. § 1226(c)(1)(C);[4] 8 U.S.C. § 1227(a)(2)(A)(i) ("Any alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.").

The Supreme Court rejected a constitutional challenge to Section 1226(c) in *United States v. Demore*, where it held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons . . . be detained for the brief period necessary for their removal proceedings." 538 U.S. at 513. In so holding, the Court reiterated the "fundamental premise of immigration law" that, "[i]n the exercise of its broad power over naturalization and

---

[4] If an alien meets these criteria, the Attorney General may order release "only if": (1) release is necessary for certain witness-protection purposes; and (2) the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2); *see also Jennings v. Rodriguez*, — U.S. — , 138 S. Ct. 830, 837-38 (2018) (explaining that "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)" and summarizing Section 1226(c)'s detention and release requirements). The Attorney General also must consider the severity of the criminal offense. *See* 8 U.S.C. § 1226(c)(2).

immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 521 (quoting *Diaz*, 426 U.S. at 79-80) (internal quotations omitted).

The Court's holding in *Demore* aligns with its prior recognition that "the responsibility for regulating the relationship between the United States and [its] alien visitors [is] committed to the political branches of the Federal Government." *Diaz*, 426 U.S. at 81. Indeed, "[o]ver no conceivable subject is the legislative power of Congress more complete." *Flores*, 507 U.S. at 305 (internal quotations and citations omitted). Because decisions regarding immigration "may implicate [the United States'] relations with foreign powers, and [because] a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently . . . more appropriate [for] either the Legislature or the Executive than [for] the Judiciary." *Diaz*, 426 U.S. at 81.

Against this backdrop, courts must give particular care to the constitutional interests, governance concerns, and individual rights involved on these weighty questions. Indeed, courts must employ "a narrow standard of review of decisions made by the Congress or the President" and must exercise "the greatest caution" in evaluating constitutional claims that implicate those decisions. *See Diaz*, 426 U.S. at 81-82. In this way, courts strive for the proper constitutional balance in Section 1226(c) cases. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011) ("[C]ourts reviewing petitions for writ of habeas corpus must exercise their independent judgment as to what is reasonable."), *abrogated on other grounds*,

9

*Jennings*, — U.S. —, 138 S. Ct. 830 (2018); *Garcia v. Whitaker*, No. 6:18-cv-06836-MAT, 2019 WL 3802536, at *8 (W.D.N.Y. Aug. 13, 2019) ("*Jennings* left open the possibility that individual detentions without bond hearings might eventually violate due process.").

Detention during removal proceedings "is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. There is no bright-line rule as to when a period of detention under Section 1226(c) may violate due process. *See Johnson v. Orsino*, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013) (noting that "the Supreme Court did not set a bright-line outer limit for what constitutes a permissible period of detention" and that courts "must assess the duration of the detention in proper context"); *Johnson v. Phillips*, No. 10-CV-480A, 2010 WL 6512350, at *7 (W.D.N.Y. Dec. 20, 2010) ("The Supreme Court in *Demore* noted the average time for conducting a removal proceeding (including appeal), but it did not set the outer limit for how long an alien may be detained while awaiting determination of his or her removal proceeding." (citation omitted)). In *Demore*, the Court reiterated its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *See* 538 U.S. at 526; *see also id.* at 513 (alien's detention under Section 1226(c) "for the brief period necessary for their removal proceedings" was constitutional).

Detention pending a determination of removability has a "definite termination point." *Demore*, 538 U.S. at 529. Where a petitioner appeals the IJ's decision to the BIA, such detention ends with a BIA determination and, if

10

applicable, a final order of removal. *See, e.g., id.* at 529. Other delays attributable to a petitioner may also permissibly extend the termination point. *See id.* at 530 (identifying delay in petitioner's request for a continuance of his removal hearing); *id.* at 531 n.14 (concluding, where petitioner argued that "the length of detention required to appeal may deter aliens from exercising their right to do so," that "the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices" (internal quotations and citations omitted)).

Because the Due Process Clause prohibits "arbitrary" deprivations of liberty, a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). For instance, an "unreasonable delay by the [government] in pursuing and completing deportation proceedings" may suggest that detention is being used "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33. That analysis depends on "the circumstances of [the] case." *Id.* at 533.

*Demore* also highlights the "process" that has been built into a mandatory detention under Section 1226(c)—for example, that Section 1226(c) applies to detainees whose convictions were generally "obtained following the full procedural protections [the] criminal justice system offers." *See* 538 U.S. at 513; *id.* at 525 n.9

11

(noting that "respondent became 'deportable' under § 1226(c) only following criminal convictions that were secured following full procedural protections"); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 n.7 (2d Cir. 2020) (finding a "sharp contrast" between procedural protections afforded to criminal defendants who are later detained under Section 1226(c) and those afforded to Section 1226(a) detainees); *see also Demore*, 538 U.S. at 531-32 (Kennedy, J., concurring) (describing process available pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)).

## C. Guideposts Relevant to the Reasonableness of Section 1226(c) Detention

Since *Jennings*, the Second Circuit "has not addressed . . . the standard to be utilized by courts in addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context." *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 796-97 (W.D.N.Y. 2019). District courts in this Circuit, in determining whether the petitioner's "length of detention has become unreasonable or unjustified," have considered factors such as:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Id.* at 797. If this analysis reveals that the detention is not unreasonably prolonged, there is no procedural due process violation, and the analysis ends. *See Kabba v.*

*Barr*, 403 F. Supp. 3d 180, 185 (W.D.N.Y. 2019). If, however, a court concludes that the alien's detention is unreasonably prolonged, its next step considers what process petitioner is due—*i.e.*, whether the government has "provided the procedural safeguards required by the Due Process Clause." *Id.*[5]

Because a procedural due process analysis is fact- and case-specific, decisions addressing Section 1226(c) due process challenges in similar circumstances reveal certain helpful guideposts. *See Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497-499 (W.D.N.Y. May 10, 2020).

For example, procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct. *Compare Demore*, 538 U.S. at 530-31 (detention for six months did not violate Fifth Amendment), *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (denying bond hearing where petitioner was detained for "just over a year" and "delay was not the result of any apparent inaction or unreasonable

---

[5] To determine the safeguards necessary to ensure that a petitioner receives "the opportunity to be heard at a meaningful time and in a meaningful manner," the Court considers: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, plus the likely value, if any, of other procedural safeguards; and (3) the government's interest, including the function at issue and the burden that any other procedural requirement would impose. *See Eldridge*, 424 U.S. at 333, 335 (internal quotations and citation omitted); *see also Kabba*, 403 F. Supp. 3d at 188 (citing *Eldridge* factors at "the second step of the two-part inquiry—the process constitutionally due to [petitioner]").

delay on the part of the Government"), and *Minaya-Rodriguez*, 459 F. Supp. 3d at 501 (denying bond hearing where petitioner's nearly-13-month detention in DHS custody was "within the range" of his sentence for his underlying criminal offense), *with Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *2, *8, *10 (S.D.N.Y. July 25, 2018) (granting bond hearing where petitioner was detained "just over nine months," petitioner "attempted to speed things along" but waited more than a month for an initial appearance, and the IJ sua sponte adjourned a merits hearing for two months), *and Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, *11 (granting bond hearing where petitioner was detained for "over eight months" and delay in removal proceedings was "largely attributable to immigration officials' failure to process and send [petitioner]'s A-file to his counsel").

Generally, petitions based on 15 to 21 months' detention are denied where some reasonableness factors favor the petitioner, some factors favor the government, and neither party bears greater responsibility for delay in removal proceedings. *See, e.g.*, *Garcia*, 2019 WL 3802536, at *8-*9 (denying bond hearing where petitioner was detained for 17 months, there was "no evidence that the proceedings [were] prolonged by dilatory tactics on the part of the Government," and "neither party [was] at fault for any delay, which appear[ed] largely due to the burgeoning case docket of the Immigration Court in Batavia");[6] *Lway Mu v.*

---

[6] In this district, courts' analyses of the delay factor have diverged if delays in removal proceedings result from a backlog in Batavia's Immigration Court. *See Kabba*, 403 F. Supp. 3d at 187 n.6 (finding that "to the extent that there is a backlog, responsibility for its impact falls on the government" and that "if there is a

*Whitaker*, No. 6:18-cv-06924-MAT, 2019 WL 2373883, at *4 (W.D.N.Y. June 4, 2019) (denying bond hearing where petitioner was detained for 19 months, some delays were "attributable to strategic decisions by [petitioner] and his attorney," other delays did not result from petitioner's litigation strategy, and there was "no evidence . . that the Government ha[d] unreasonably prolonged [petitioner]'s removal proceedings); *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *6, *7 (W.D.N.Y. Nov. 7, 2018) (denying bond hearing where petitioner was detained "for more than 16 months," noting that "courts in this Circuit considering *habeas corpus* claims related to § 1226(c) have found that delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country" (internal quotations and citations omitted)); *Thompson v. Lynch*, No. 16-CV-6608 (CJS), 2017 WL 344970, at *6 (W.D.N.Y. Jan. 24, 2017) (denying bond hearing where detention reached 21 months and "petitioner's removal ha[d] been delayed by his own actions in pursuit of relief in the federal courts," so "neither his detention . . . nor its duration" established a due process violation); *Orsino*, 942 F. Supp. 2d at 408-09 (denying bond hearing where petitioner was detained for 15 months and remained in custody solely because he "chose to appeal the IJ's removal

_____

burgeoning case docket at the Batavia Immigration Court, that is a problem caused by Congress, the executive branch, or both . . . [b]ut it is certainly not a problem caused by detained aliens"). This Court agrees with the *Garcia* court's view and attributes responsibility for docket-based delays to neither party. *See Garcia*, 2019 WL 3802536, at *9; *see also Sosa Rodriguez v. Feeley*, No. 20-CV-97, 2020 WL 7346139, at *8 n.9 (W.D.N.Y. Dec. 15, 2020); *Minaya-Rodriguez*, 459 F. Supp. 3d at 498 n.7.

order," as he was entitled to, and that "delay caused by his actions [did] not make continued detention unreasonable or unjustified" (internal quotations and citations omitted)); *Phillips*, 2010 WL 6512350, at *6-*7 (recommending denying bond hearing where petitioner was detained for 17 months, the record did "not indicate any delay or foot dragging by the Government," and the "only significant delay" was the roughly nine months petitioner's appeal was pending with the BIA), *recommendation adopted*, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); *Adler v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 4093(SAS), 2009 WL 3029328, at *1-*2 (S.D.N.Y. Sept. 22, 2009) (denying bond hearing where petitioner was detained for over 15 months—"more than twice as long as the maximum duration contemplated by the *Demore* Court"—but there was "no evidence in the record that the government ha[d] dragged its feet"). *But see Ranchinskiy*, 422 F. Supp. 3d at 798-801 (granting bond hearing where detention reached 21 months, some delay was attributable each party, and "on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, . . . continued detention without a bond hearing [was] constitutionally unjustified"); *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (granting bond hearing where petitioner was detained for almost 17 months without a hearing, principally because the government was responsible for delays in removal proceedings that had "no constitutionally acceptable reason").

When detention exceeds 24 months, the petitioner generally prevails if some reasonableness factors favor the petitioner and some favor the government. *See,*

16

e.g., *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 470, 477 (3d Cir. 2015) (granting bond hearing where petitioner was detained for 34 months and "neither the Government nor [petitioner] caused any extraordinary delays" and the parties "act[ed] in good faith"), *abrogated in part and on other grounds, Jennings*, 138 S. Ct. 830; *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 266, 270-71 (3d Cir. 2012) (granting bond hearing where petitioner was detained for almost 48 months and delay resulted from a combination of government conduct and petitioner's successful efforts to contest removal), *abrogated in part and on other grounds, Jennings*, 138 S. Ct. 830; *Constant v. Barr*, 409 F. Supp. 3d 159, 163, 169 (W.D.N.Y. 2019) (granting bond hearing where petitioner was detained for 25 months and "the record [did] not show that Petitioner was engaging in bad faith delay tactics").

Petitioners detained for more than 24 months may not prevail if they employ a litigation strategy that can be viewed as dilatory or unusual compared to similarly situated detainees. *See, e.g., Dor v. Dist. Dir., I.N.S.*, 891 F.2d 997, 999, 1003 (2d Cir. 1989) (holding that no procedural due process violation existed where petitioner was detained for 60 months because "his sustained detention" resulted from "the simple fact that—at his urgent request and by [a] stay—[the court] allowed his application to be exhaustively adjudicated" by the government"); *Manley v. Delmonte*, No. 17-CV-953, 2018 WL 2155890, at *1-*2 (W.D.N.Y. May 9, 2018) (denying petition where detention exceeded 24 months, petitioner asked the Second Circuit to defer consideration of his immigration appeal until a state appeal of his criminal conviction concluded, and most delays were at petitioner or his attorney's

request); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 190, 199 (W.D.N.Y. 2010) (denying bond hearing where petitioner was detained for approximately 39 months and filed an untimely appeal to the Second Circuit); *Sosa Rodriguez*, 2020 WL 7346139, at *9 (denying bond hearing where petitioner was detained for 27 months and his pending BIA appeal was the sole barrier to removal).

These guideposts, though not dispositive, inform the Court's analysis of Velez Funes's request for a bond hearing.

### D.      Velez Funes's Detention Comports with the Fifth Amendment

Velez Funes challenges his continued detention on substantive and procedural due process grounds, arguing that his nearly-22-month detention has become unreasonably prolonged, and that the government must provide an individualized bond hearing with a "neutral decision-maker." Dkt. 1, at 4 ¶¶ 23-28; *see also* Dkt. 21 at 2. The Supreme Court's holding and rationale in *Demore* provide the baseline for this Court's analysis. And the multi-factor test applied by district courts within this Circuit provides an additional framework. Based on this baseline and framework, the Court concludes that Velez Funes's detention has not been unreasonably prolonged in violation of his due process rights.

The critical issue is whether Velez Funes's detention pending determination of his removal proceedings is unconstitutional beyond the "limited period" contemplated in *Demore*. 538 U.S. at 526. Velez Funes's initial petition asserted that he was "not significantly likely" to be removed in the reasonably foreseeable

18

future. Dkt. 1, at 4 ¶ 25. And in his latest filing, Velez Funes contends that there is "no certainty" as to when he will be removed to Honduras. Dkt. 21-1, at 3 ¶ 5. Velez Funes's submission further argues that he is "not . . . to be blamed for any delay" in his removal proceedings. *Id.* at 6 ¶ 17.

In its opposition, the Government argues that Velez Funes's reliance on cases like *Zadvydas v. Davis*, 533 U.S. 678 (2001), is misplaced. Specifically, the government argues that "any claim . . . of a due process violation is premature and warrants dismissal" because Velez Funes's removal order is still pending appeal. *See* Dkt. 6, at 10. The Government also maintains that the "ongoing detention of a noncitizen resulting from continuing litigation does not give rise to a due process claim." *Id.* at 13.

Although Velez Funes's detention pending the determination of his removal proceedings is significant, the length of detention "is not to be considered in isolation." *See Garcia*, 2019 WL 3802536, at *10, *Sosa Rodriguez*, 2020 WL 7346139, at *9; *see also Dryden*, 321 F. Supp. 3d at 502 (holding that it was "insufficient that Petitioner's detention ha[d] merely become suspect by reaching this six month to a year threshold," and that petitioner "must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause"). As stated elsewhere, "the sheer length of the proceedings is not alone determinative of reasonableness." *De La Rosa v. Barr*, No. 6:19-cv-06418-MAT, 2019 WL 5842906, at *5 (W.D.N.Y. Nov. 7, 2019) (quotations and citations omitted).

19

This is not a case of indefinite or unreasonable detention. Here, Velez

Funes's Section 1226(c) detention "will come to an end, one way or another, upon

the disposition of his appeal" to the BIA. *See e.g., Sigal*, 2018 WL 5831326, at *6.

In any case, any harm that would result if Velez Funes's detention continued for an

unreasonable amount of time is mitigated by his ability to file a new petition if the

facts meaningfully change.

*Demore* allows the Court to examine the reason for any delay in Velez Funes's

removal. *See Demore*, 538 U.S. at 530-31 n.14-15; *see also Ranchinskiy*, 422 F.

Supp. 3d at 797. In this case, at least some of the delay is attributable to Velez

Funes's express requests to adjourn his immigration proceedings. *See e.g.,* Dkt. 5-1,

at 4 ¶¶ 16, 21. Velez Funes also made the decision to appeal his removal order, and

he requested an extension of the briefing schedule in connection with that appeal.

*Id.* at 6 ¶ 26.

To be sure, Velez Funes is permitted to request extensions from the IJ, just

as he may avail himself of "process" by appealing at the BIA. But he cannot expect

any resulting delay to bolster his due process claim. *See Sigal*, 2018 WL 5831326,

at *5 (recognizing that "whether a delay in removal is attributable to a petitioner's

own litigation strategy is a key consideration in considering due process

challenges"). If a petitioner could delay enough and thereby earn release, he could

defeat the process. *See Demore*, 538 U.S. at 531 n.14 (concluding "there is no

constitutional prohibition against requiring parties" to "mak[e]. . . difficult

judgments," such as whether to risk a lengthier detention by exercising their right

to appeal); *id.* at 530-31 n.15 (considering the delay resulting from the alien's request for a continuance of his removal hearing so he could obtain relevant documents); *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (concluding that the alien's "litigation strategy [was] perfectly permissible" but that he could "not rely on the extra time resulting therefore to claim that his prolonged detention violates substantive due process"); *Manley*, 2018 WL 2155890, at *2 (denying bond hearing where petitioner was "partly in control of the sequence of events that will end his detention and partly responsible for the length of the proceedings that have extended it" because he or his attorney "prolonged the finality of [his] removal order" by requesting extensions and stays; "having that right does not mean it may be exercised without consequence"); *Sosa Rodriguez*, 2020 WL 7346139, at *9 (concluding that petitioner's "pending appeal to the BIA [did] not impermissibly extend his detention").

Velez Funes's due process claims also fail under the narrow test proposed in Justice Kennedy's *Demore* concurrence. The circumstances of Velez Funes's detention do not support an inference that his detention is arbitrary, unreasonable, or unjustified. *Demore*, 538 U.S. at 532. There are no facts suggesting that DHS seeks to detain Velez Funes for "other reasons" beyond facilitating deportation or protecting against risk of flight or dangerousness.[7] *Id.* at 532-33.

---

[7] The Court's analysis of the nature of the underlying offense that resulted in Velez Funes's Section 1226(c) detention also supports this conclusion. In his memorandum of law, Velez Funes maintains that his "only crime of conviction is

Under these circumstances, this Court concludes—as have others on similar facts[8]—that Velez Funes's continued detention comports with his procedural due process rights.

Velez Funes's continued detention also comports with substantive due process. Substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations and citations omitted). Velez Funes's detention has not become so unreasonably prolonged as to render his confinement unconstitutional. *See e.g., Doherty*, 943 F.2d at 205 (holding that an eight-year detention did not violate substantive due process).

If his detention were pursuant to Section 1226(a), the Court might have reached a different conclusion. *See generally Velasco Lopez*, 978 F.3d at 842. But upon review of Velez Funes's Section 1226(c) detention and the circumstances surrounding it, the Court finds no evidence that his detention has become

---

classified as a **non-violent class 'E' felony** – the lowest felony under the Penal Law; just one grade above a misdemeanor." Dkt. 21-1, at 5 (emphasis in original). In doing so, Velez Funes minimizes the seriousness of his offense, which demonstrates a risk of dangerousness to the community. *See, e.g., Akrami v. Chertoff*, 186 Fed. Appx. 47, 49 (2d Cir. 2006) (deeming drug trafficking crimes and related conspiracies to be "particularly serious crimes"). This bears on the reasonableness of his continued detention. See *Ranchinskiy*, 422 F. Supp. 3d at 797.

[8] The Court has considered where Velez Funes's detention falls among the guideposts discussed above. *See* Analysis, Section I(C), *supra*. That consideration supplements—but does not replace—the Court's analysis of *Demore* and the reasonableness factors applied by district courts in this Circuit.

22

unjustified, unreasonable, or arbitrary—especially in light of the nature of his conviction, his chosen litigation strategy, and the absence of any apparent inaction or bad faith on the part of the Government. None of the additional allegations, or points of clarification, contained in Velez Funes's amended filing compels a contrary result.

## II.  Velez Funes's Statutory Claim

Velez Funes's original complaint also asserted a statutory violation of the INA, specifically 8 U.S.C. § 1231(a)(6). Dkt. 1, at 3 ¶ 22. Velez Funes's amended filing, which concedes that 8 U.S.C. § 1226(c) applies to his detention, seemingly withdraws this claim. *See supra* at 2, n.2. In any case, no private right of action exists under the INA. *Farag v. United States Citizenship and Immigr. Servs.*, 531 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008) ("To the extent that he may generally allege a violation of the Immigration and Naturalization Act, that would be insufficient because that statute does not itself create a cause of action") (internal quotations omitted); *see also Takamiya v. DNP America, LLC*, No. 14-CV-10301, 2016 WL 4030861, at *3 (S.D.N.Y. July 25, 2016). Velez Funes's statutory claim is therefore dismissed.

## CONCLUSION

For these reasons, the relief requested in Velez Funes's petition for a writ of habeas corpus is denied. His petition is dismissed without prejudice to filing a new petition in the future based on new and different facts, consistent with the analysis above. Because the Court has dismissed all of Velez Funes's claims, the request

made in his initial petition for costs and attorney's fees is denied. Petitioner's

pending motion to dismiss evidence is likewise denied as moot. The Clerk of Court

is directed to close this case.

SO ORDERED.

Dated:      June 17, 2021
            Buffalo, New York

 

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE